**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------  :
                                       :
BASIM W. ABDULLAH, a/k/a               :
HAROLD LEE GREEN,                      :     Civil Action No. 02-2248 (RBK)
                                       :
          Petitioner,                  :
                                       :
     v.                                :            **OPINION**
                                       :
TERRANCE MOORE, et al.,                :
                                       :
          Respondents.                 :
------------------------------------  :

**APPEARANCES:**

     BASIM W. ABDULLAH, Petitioner <u>Pro</u> <u>Se</u>
     a/k/a Harold Lee Green
     # 72248
     East Jersey State Prison
     Lock Bag "R"
     Rahway, New Jersey 07065

     GREGORY GLENN WATERSTON, ESQ.
     Salem County Prosecutor's Office
     Salem County Courthouse
     87 Market Street
     Salem, New Jersey 08079
     Attorneys for Respondents

**KUGLER, District Judge**

     This matter is before the Court on petitioner Basim W. Abdullah's application for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.   <u>BACKGROUND</u>

A.   <u>Procedural History</u>

Petitioner, Basim W. Abdullah, a/k/a Harold Lee Green, ("Abdullah"), is presently confined at the East Jersey State Prison in Rahway, New Jersey, serving a life sentence with a 25 year parole disqualifier.  (A-6).[1]

On September 29, 1981, a Salem County Grand Jury returned a three count indictment against Harold Lee Green (Abdullah), charging him with aggravated assault, in violation of N.J.S.A. 2C:12-1b(2); first degree robbery, in violation of N.J.S.A. 2C:15-1; and first degree attempted murder, in violation of N.J.S.A. 2C:11-2 and 2C:11-3.  (A-1).

Before trial, Abdullah's counsel made a motion to dismiss the indictment on the grounds of insufficient evidence and prosecutorial misconduct at the grand jury proceeding.  The court denied the motion on May 24, 1982.  (A-3).  The case proceeded to trial by jury before the Honorable Norman Telsey, J.S.C., Superior Court of New Jersey, Salem County, on June 30, 1982, and concluded on July 2, 1982.  Abdullah was found guilty as charged on counts one and two, but was acquitted on the attempted murder charge.  On July 7, 1982, the State made a motion for an extended

---

[1]   In answering the habeas petition, Respondents submitted an appendix containing relevant portions of the state court proceedings and other documentary materials for review. Documents designated a ("A-__") refer to respondents' appendix.

sentence pursuant to N.J.S.A. 2C:44-3.  Abdullah was sentenced on August 13, 1982.[2]

Abdullah filed a direct appeal of his conviction and sentence to the New Jersey Superior Court, Appellate Division, on or about September 27, 1982.  He claimed that the verdict was against the weight of the evidence, that the grand jury indictment was defective and tainted, and that the prosecutor violated a sequestration order depriving Abdullah of a fair trial.  In a per curiam opinion dated June 24, 1985, the Appellate Division affirmed the conviction and sentence.  (A-10).  The Supreme Court of New Jersey denied Abdullah's petition for certification on June 5, 1986.  (A-20).

Abdullah then filed an application for post-conviction relief ("PCR") before the trial judge.  The state PCR application was summarily denied on September 19, 1986, and Abdullah appealed.  The Appellate Division reversed and remanded the matter on July 12, 1989, on the grounds that petitioner should have been appointed counsel.  (A-22).  On remand, counsel was appointed and the PCR application was amended and supplemented by counsel and by Abdullah, pro se.  Abdullah again raised the same claims concerning the violation of a sequestration order during trial and prosecutorial misconduct at the grand jury proceeding.

---

[2]  Abdullah was sentenced to life imprisonment with 25-years parole ineligibility on the first count.  The second count merged with the first count for sentencing purposes.  (A-6).

He also raised new claims that both his trial and appellate
counsel were ineffective.  Specifically, petitioner alleged that
appellate counsel was ineffective in failing to raise as a ground
for appeal the absence of a specific charge on identification by
the trial court.  The trial court denied the PCR application by
letter opinion dated March 13, 1990.  (A-24).  An Order was
entered on May 3, 1990.  (A-26).

Before the May 3, 1990 Order was entered, Abdullah appealed
the PCR denial to the Appellate Division.  On July 24, 1992, the
Appellate Division affirmed the denial of Abdullah's PCR
application.  The appellate court found that petitioner's first
two claims were never raised in prior proceedings and are not
cognizable on appeal.[3]  Moreover, the claims lacked merit.
Petitioner's ineffective assistance of counsel claims were
likewise devoid of merit.  (A-27, A-28).  The Supreme Court of
New Jersey denied Abdullah's petition for certification on
November 5, 1992.  (A-29).

On April 19, 1993, Abdullah filed a state habeas corpus
petition before the Superior Court of New Jersey, Middlesex
County.  The writ was denied on September 16, 1993, pursuant to

---

[3]  The claims were identified as "(1) the trial court
committed plain error by failing to instruct the jury on the
principles pertaining to identification, (2) the State failed to
sustain its burden of proof regarding the question of
identification, and (3) trial and appellate counsel were
ineffective."  (A-28).

4

N.J.S.A. 2A:67-14(b).  (A-30).  Abdullah then filed a motion for a prerogative writ, which was denied on April 6, 1994.  (A-31).  Abdullah appealed both denials, and on October 18, 1996, the Appellate Division affirmed.  Abdullah thereafter filed his third state PCR petition, on July 10, 1997.  In support of his petition, Abdullah argued that the verdict was against the weight of the evidence, the jury instructions were erroneous, and that the sentence was illegal and excessive.  The trial court denied the third PCR petition on October 29, 1998, with a final order entered on November 19, 1998.  (A-33).  An appeal was filed and the Appellate Division affirmed on January 30, 2001.  (A-34).  Certification was denied by the New Jersey Supreme Court on February 10, 2002.  (A-36).

Abdullah filed this § 2254 habeas petition on or about May 6, 2002.  The petition was deficient because it failed to specify petitioner's grounds for habeas relief.  It also appeared that the petition was time-barred under 28 U.S.C. § 2244(d)(1).  The Court issued an Order, filed June 14, 2002, granting petitioner 30 days to resubmit an amended petition that specifies the grounds for habeas relief, and directing petitioner to provide information relating to the statute of limitations issue. (Docket Entry No. 3).  Petitioner filed an amended petition on

July 17, 2002.[4]   Abdullah then sought to amend or supplement his petition by motion filed on August 21, 2002.  Respondents answered the petition on November 1, 2002.  Abdullah filed another motion with a supporting certification on December 16, 2002.  (Docket Entry Nos. 10, 11).  In his second motion, Abdullah asked the Court to dismiss only the unexhausted claims raised in his petition, namely, his claims alleging a denial of his right to testify at trial and present an alibi defense. Abdullah filed a reply or traverse to the respondents' answer on January 6, 2003.  The motion to amend or supplement the petition was denied by the Court by Order dated January 29, 2003.  (Docket Entry No. 13).  By Order dated September 30, 2003, the Court granted petitioner's motion to dismiss only the unexhausted claims in the petition.[5]  (Docket Entry No. 19).  Accordingly, those claims are not before the Court in this Opinion.

On March 11, 2005, Abdullah filed another request for appointment of counsel.  He filed an amended petition, without leave of this Court, on June 2, 2005.  The request to amend the

---

[4]  Abdullah also sought appointment of counsel.  By Opinion and Order filed August 15, 2002, the Court denied petitioner's application without prejudice.  (Docket Entry Nos. 6, 7).

[5]  In the interim, on February 26, 2003, Abdullah filed a notice of appeal with respect to the denial of his motion to amend the petition.  The case was sent to the United States Court of Appeals for the Third Circuit on March 3, 2003.  The Third Circuit dismissed the appeal for lack of appellate jurisdiction on September 19, 2003 and the case was returned to this Court on the same date.

6

petition is granted because Abdullah seeks only to correct typographical or pagination errors in his petition.  He does not attempt to add new claims.  However, the motion to appoint counsel will be denied as moot, since the Court finds no merit to Abdullah's habeas petition, as set forth below.

B.   <u>Factual Background</u>

The following rendition of facts are taken from the state court record and the state appellate court opinions.

On August 21, 1981, Abdullah and his victim, Wallace Hahl, were co-employees at the Anchor Hocking Glass Co. in Salem, New Jersey.  Testimony at trial confirmed that Hahl was generally known to carry large sums of cash on him at work, and that on August 21, 1981, he had been carrying two $100 bills, which he called his "lucky pieces."

Abdullah had been seen "punching out" at the end of his shift at 3:00 p.m. and reentering the plant where he worked.  He was then observed leaving the area and going through a back storage area carrying a bundle of clothing with a jacket wrapped around it under his arm.  At the same time, a tow motor operator in the warehouse saw a black man of the same height and weight as Abdullah come out from behind a load in the warehouse, stop, look and run across an alley.  This person was wearing a blue shirt, blue jeans and a blue or red bandana on his head.  The tow operator drove down the alley to see who the person was, but he

found no one there.  He then continued to where Hahl worked and asked if Hahl had seen anyone.  Hahl responded no.  At about 3:15 p.m., another worker saw someone running from an adjacent alley who was about the same height and weight as petitioner, and wearing a red bandana.  The worker called out, but the person did not answer and ran between a load of wares.  The worker went searching for the person and came upon the tow operator.  A few minutes later, the worker saw petitioner come from the alley holding a jacket which covered his hands.  The petitioner was wearing a plaid shirt and tan pants.  At about 3:25 p.m., another employee found Hahl sitting in his tow motor in an alley.  Hahl was bleeding profusely from the back of his head and stated he thought something hit him.

Hahl was taken to the hospital and it was discovered that his wallet was missing.  He slipped into a coma and remained comatose at the beginning of trial.  The examining physician stated that Hahl's injury was inflicted by a hard instrument, but nothing was found at the warehouse to indicate that he had been hit by a falling object.

Abdullah was detained by the police after he was observed at the hospital the day of Hahl's injury.  Petitioner's clothing and sneakers were taken from him as well as $560.00, which included two $100.00 bills and lesser bills.  At the warehouse, the police found sneaker prints on two pieces of cardboard.

However, the prints could not be positively matched to petitioner's sneakers.  Nevertheless, it was established that wearing sneakers at the warehouse was a discouraged practice. The police searched the storage area where Abdullah kept his work clothes and found a paper bag with Abdullah's trousers, a joggin jacket and a pair of his work shoes.  A plant security officer found a sledgehammer behind the sprinkler hose.  The plant janitor found the victim's wallet in the bay area.  Police found a bludgeon and a piece of red cloth from other places in the general area.  Half of the bludgeon was wrapped in tape found in the area where petitioner worked.  Hair taken from the red cloth matched a hair sample taken from petitioner.

## II.  CLAIMS FOR HABEAS RELIEF

Abdullah raises the following claims in his federal habeas petition:[6]

Ground One (labeled 2-A in Petition):  Ineffective assistance of counsel based on trial counsel's failure to request a jury charge on the crucial issue of identification.

---

[6]  In a brief supporting his petition for habeas relief under § 2254, Abdullah enumerates 10 points or grounds for relief.  The Court has renumbered the claims because Point 1-A, Ground 1-A and Ground 8 do not pertain to the merits of Abdullah's petition for habeas relief.  In Point 1-A, petitioner seeks appointment of counsel, which was denied by Opinion and Order dated August 15, 2002.  Ground 1-A pertains to petitioner's argument that his claims are exhausted; and Ground 8 relates to the time-bar issue.  Petitioner asserts in Ground 8 that the mailbox rule applies to him, and that his amended petition was timely filed.

Ground Two (labeled 3 in Petition):  Ineffective assistance of trial counsel in failing to object to a deficient jury charge.

Ground Three (labeled 4 in Petition):  The trial court abused its discretion in hindering petitioner's right to a fair trial by ruling that res judicata precluded review of an erroneous jury charge.

Ground Four (labeled 5 in Petition):  The indictment was defective in that it contained charges involving murder and a weapon, when no weapon or murder was involved.

Ground Five (labeled 6 in Petition):  Prosecutor failed to inform grand jury that a laboratory report excluded petitioner from the crime, in violation of his Fourteenth Amendment rights.

Ground Six (labeled 7 in Petition):  The extended sentence is illegal.

Ground Seven (labeled 9 in Petition):  Ineffective assistance of appellate counsel.

Ground Eight (labeled 10 in Petition):  Petitioner was denied his constitutional right to testify at trial and present alibi defense.  This last claim was dismissed at the request of petitioner, by Order of this Court dated September 30, 2003, on the grounds that the claim was unexhausted.[7]

---

[7]  Abdullah filed his motion to dismiss this unexhausted claim after the respondents' answer was filed.  In their answer, respondents argued that Abdullah did not exhaust his claim that he was deprived of his right to testify at trial and present an alibi defense before raising it in his federal habeas petition.

10

III.   <u>EXHAUSTION REQUIREMENT AND PROCEDURAL DEFAULT</u>

Respondents argue that several of petitioner's claims are procedurally defaulted.  In particular, respondents note that Abdullah's claims regarding the identification issue, the general jury charge, his illegal and excessive sentence, and ineffective assistance of trial and appellate counsel, were all held to be procedurally barred under N.J.Ct.R. 3:22-12, by the New Jersey Law and Appellate Divisions on state court review.

It is well established that a state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ." 28 U.S.C. § 2254(b)(1); <u>see also</u> 28 U.S.C. §2254(c); <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982); <u>Johnson v. Pinchak</u>, 392 F.3d 551, 556 (3d Cir. 2004).  A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the

---

The claim was never presented to the state court in either his direct appeal or in state PCR proceedings.  Furthermore, based upon the state court's rejection of Abdullah's effort to bring an untimely petition for post-conviction relief raising ineffective assistance of counsel claims, respondents argued that the state courts would reject any attempt at this time to bring another petition for post-conviction relief raising any new claim. Respondents also asserted that the claim is time-barred under 28 U.S.C. § 2244(d), precluding petitioner from asserting the unexhausted claim in this federal habeas action.  Indeed, the limitations period has long expired under 28 U.S.C. § 2244(d) and Abdullah would not be entitled to a stay of proceedings to enable him the opportunity to exhaust his state court proceedings.

11

state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal), cert. denied, 532 U.S. 919 (2001); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied.  Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts establishing exhaustion.  Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition.  Picard, 404 U.S. at 275.  Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same.  Id. at 277.

Failure to exhaust may be excused on the basis that state process is unavailable, but "state law must clearly foreclose state court review of unexhausted claims." Toulson, 987 F.2d at 987. In addition, the Court of Appeals for the Third Circuit has stated that, "if a prisoner could establish that the activities of the state authorities made the prisoner's resort to the state procedures in effect unavailable, exhaustion would be excused." Mayberry v. Petsock, 821 F.2d 179, 184 (3d Cir.), cert. denied, 484 U.S. 946 (1987).[8]

When a claim has not been fairly presented to the state courts because state procedural rules bar the prisoner from seeking further relief in state court, the exhaustion requirement is satisfied because there is "an absence of available State corrective process." 28 U.S.C. § 2254(b). See Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). However, when a state procedural rule has prevented the state

---

[8] However, discovery and an evidentiary hearing should not be made available to a habeas petitioner who claims relief from the exhaustion rule "unless the petitioner sets forth facts with sufficient specificity that the district court may be able, by examination of the allegations and the response, if any, to determine if further proceedings are appropriate." Mayberry, 821 F.2d at 186. "[T]he allegations of exhaustion must be at least as specific with respect to the facts allegedly excusing exhaustion as is required for allegations alleging constitutional deprivation as the basis for the habeas petition." Id. at 187. In this case, Abdullah presents no facts to suggest that state authorities acted in any way to prevent him from asserting his habeas claim for state court review.

courts from reaching the merits of a petitioner's federal claims,
federal habeas review of those claims ordinarily is barred
because the petitioner has procedurally defaulted the claims.
Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991).  Where one state
judgment rejects a petitioner's federal claims on state
procedural grounds, "later unexplained orders upholding that
judgment or rejecting the same claims rest upon the same ground."
Id. at 803.[9]

> A procedural default occurs when a prisoner's federal
> claim is barred from consideration in the state courts
> by an "independent and adequate" state procedural rule.
> See, e.g., Doctor[ v. Walters, 96 F.3d 675, 683 (3d
> Cir. 1996)].  Federal courts may not consider the
> merits of a procedurally defaulted claim unless the
> applicant establishes "cause" to excuse the default and
> actual "prejudice" as a result of the alleged violation
> of the federal law or unless the applicant demonstrates
> that failure to consider the claim will result in a
> fundamental "miscarriage of justice."  Coleman v.
> Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115
> L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

On habeas review of state prisoner claims, a federal court
"will presume that there is no independent and adequate state
ground for a state court decision when the decision 'fairly
appears to rest primarily on federal law, or to be interwoven

---

[9] A petitioner's procedural default precludes federal habeas
review only if the last state court rendering a judgment in the
case rests its judgment on the procedural default.  Harris v.
Reed, 489 U.S. 255, 262 (1989).  Where a state-court decision is
ambiguous, the federal habeas court may address a federal issue
considered by the state court.  Id. at 262-63.

with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" <u>Coleman</u>, 501 U.S. at 734-35 (quoting <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41 (1983)).[10]  Only a "firmly established and regularly followed state practice" is adequate to prevent subsequent habeas review in federal court.  <u>James v. Kentucky</u>, 466 U.S. 341, 348-351 (1984).  <u>See also</u> <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002) ("Ordinarily, violation of "firmly established and regularly followed" state rules ... will be adequate to foreclose review of a federal claim." (citations omitted)).  Generally speaking, "[a] state court's refusal to address a prisoner's federal claims because he has not met a state procedural requirement is both independent and adequate." <u>Cabrera v. Barbo</u>, 175 F.3d 307, 312 (3d Cir. 1999) (citations omitted), <u>cert</u>. <u>denied</u>, 528 U.S. 886 (1999).

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule.  <u>See</u> <u>Coleman</u>, 501 U.S. at 752 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).  In the absence of a Sixth Amendment violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course

---

[10] A state court's reliance on a procedural bar as an alternate holding is sufficient to trigger the "cause" and "prejudice" test.  <u>See</u> <u>United States ex rel. Caruso v. Zelinsky</u>, 689 F.2d 435, 440 (3d Cir. 1982).

of the representation.  <u>Coleman</u>, 501 U.S. at 754.  Neither a pro se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard.  <u>Murray</u> at 485-87.  Failure of the state court to "bend the rules" for a pro se litigant is not cause.  <u>Caswell v. Ryan</u>, 953 F.2d 853, 862 (3d Cir. 1992), <u>cert</u>. <u>denied</u>, 504 U.S. 944 (1992).

To establish "prejudice," a petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'" <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).  In the context of an ineffective assistance claim, the Court of Appeals for the Third Circuit has held that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 670 (3d Cir. 1996).

In the alternative, in order to establish that failure to review an otherwise procedurally defaulted claim will result in a "miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Carrier</u>, 477 U.S. at 496. "Thus, to establish a miscarriage of justice, the petitioner must

prove that it is more likely than not that no reasonable juror would have convicted him." <u>Werts</u>, 228 F.3d at 193 (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 326 (1995)).

Here, the State court determined that Abdullah's claims alleging failure to instruct the jury on identification, and the State's failure to prove identification, asserted by petitioner in his petition for post-conviction relief, were barred under N.J.Ct.R. 3:22-4 because they were never raised in prior proceedings and are not cognizable on appeal.[11] (July 24, 1992 Appellate Division opinion on petitioner's appeal from denial of state PCR application, A-27, A-28). The court alternatively determined, without discussion, that the claims "clearly lack merit." (A-28). The Appellate Division further found that the ineffective assistance of trial and appellate counsel claims were "equally devoid of substance." (A-28). In Abdullah's second PCR petition on appeal, the Appellate Division found, without

_____

[11]   N.J.Ct.R. 3:22-4 provides:

> Any ground for relief not raised in a prior proceeding under this rule, or in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.

17

discussion, that the claims raised by Abdullah were without merit.  The Appellate Division relied substantially on the reasons set forth in the lower court's opinion dated October 29, 1998, including the procedural bar of N.J.Ct.R. 3:21-4, 5, and 12.[12]  (January 30, 2001 Appellate Division <u>per</u> <u>curiam</u> Opinion, A-34, A-35).

Thus, there is no clear and unambiguous determination by the state courts that the claims were dismissed solely on the grounds of procedural default or bar.  Rather, the courts also determined that the claims were without merit.  Thus, this Court finds that with respect to all remaining grounds for habeas relief, <u>see</u> this Opinion, <u>supra</u>, at §II, pp. 9-10, the exhaustion requirement was satisfied as Abdullah presented each claim to the New Jersey courts and denial of relief on the merits was affirmed by the New Jersey Appellate Division and New Jersey Supreme Court.

Even if the Court determines that the claims are procedurally defaulted, the Court may opt to review the allegedly unexhausted, defaulted claims, and deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2).  Section 2254(b)(2) provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

---

[12]  The claims raised by petitioner attacked his sentence as illegal and excessive.

18

Here, the respondents have fully addressed each of petitioner's claims on the merits, as well as asserting affirmative defenses to some of them.  It is the Court's preference to deny this petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2), when "it is perfectly clear that an applicant does not raise even a colorable federal claim."  <u>Lambert</u>, 134 F.3d at 514-15.

IV.   <u>MERITS</u>

A.   <u>Standard Governing Review of § 2254 Claims</u>

The Court recognizes that a <u>pro se</u> pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  Thus, a <u>pro se</u> habeas petition should be construed liberally and with a measure of tolerance. <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>Duarte v. Hurley</u>, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Abdullah is proceeding <u>pro se</u> in his application for habeas relief, the Court will accord his petition the liberal construction intended for <u>pro se</u> litigants.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  <u>See</u> 28 U.S.C. § 2254(e); <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert</u>.

19

denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90

(3d Cir. 1996)(*citing* Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a

habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
>> (1)  resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

28 U.S.C. § 2254(d).

    In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme

Court explained that subsection (d)(1) involves two clauses or

conditions, one of which must be satisfied before a writ may

issue.  The first clause, or condition, is referred to as the

"contrary to" clause.  The second condition is the "unreasonable

application" clause.  Williams, 529 U.S. at 412-13.  In the

"contrary to" clause, "a federal court may grant the writ if the

state arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides

a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts."  Id.  Under the

"unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. at 413.   Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.   Id. at 411.  See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court

unreasonably applied the Supreme Court precedent in reaching its decision.  <u>Werts</u>, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  <u>Id</u>.  AEDPA prohibits such *de novo* review.  Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  <u>Id</u>.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  <u>Id</u>.; <u>see also</u> <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  <u>Id</u>.; <u>see also</u> 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  <u>See</u> <u>Duncan</u>, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

B.  Ineffective Assistance of Trial Counsel

In Grounds 2-A and 3 of his petition, and in his traverse, Abdullah alleges that his trial counsel was ineffective for (1) failing to request a Wade hearing; (2) failing to object to an allegedly deficient jury charge on attempted murder and on the crucial issue of identification; (3) failing to "explore" the laboratory reports with respect to physical evidence; and (4) failing to adequately represent petitioner at the sentencing phase of the criminal proceedings.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102(3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether

23

counsel's assistance was reasonable considering all the
circumstances."  Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.
1020 (1996).

If able to demonstrate deficient performance by counsel,
Abdullah must next show that counsel's substandard performance
actually prejudiced his defense.  Strickland, 466 U.S. at 687.
Prejudice is shown if "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."  Id. at 694.  The reviewing court must evaluate the
effect of any errors in light of the totality of the evidence.

24

<u>Id</u>. at 695-96.  Thus, the petitioner must establish both
deficient performance and resulting prejudice in order to state
an ineffective assistance of counsel claim.  <u>Id</u>. at 697.  <u>See
also</u> <u>Jacobs</u>, 395 F.3d at 102; <u>Keller</u>, 251 F.3d at 418.

    1.  *Counsel's Failure to Request a <u>Wade</u> Hearing*

    Abdullah's first argument appears to suggest that his trial
counsel was ineffective for failing to request a <u>Wade</u> hearing.
This claim is clearly without merit.  Abdullah does not allege
that any out-of-court identification procedures were conducted by
the police.  Thus, there is no evidence to suggest that any
identification procedures were unnecessarily suggestive.  In
fact, the record shows that no witness testified at trial with
respect to an out-of-court identification of petitioner at the
scene of the crime.

    Abdullah's trial counsel cannot be expected to file a motion
to suppress identification testimony in a case where no such
questionable testimony has been proffered.  To establish
ineffective assistance of counsel based on a failure to file a
motion on this ground, petitioner must be able to show that the
motion would have succeeded.  Counsel's failure to file motions
does not <u>per</u> <u>se</u> constitute ineffective assistance of counsel.
<u>See</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 383-84 (1986); <u>Jelinek
v. Costello</u>, 247 F. Supp.2d 212 (E.D.N.Y. 2003).  Rather, a
determination of ineffectiveness depends on whether the motion or

objection would have been granted or sustained had it been made. United States v. Oakley, 827 F.2d 1023, 1025 (5th Cir. 1987). Thus, "[c]ounsel cannot be faulted for failing to pursue meritless or futile objections." Johnston v. Love, 940 F. Supp. 738, 776 (E.D. Pa. 1996), aff'd 118 F.3d 1576 (3d Cir.), cert. denied, 522 U.S. 972 (1997); see also Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.), cert. denied, 513 U.S. 1022 (1994)(failure to raise non-meritorious issues does not constitute ineffective assistance of counsel).  Moreover, the filing of pretrial motions "falls squarely within the ambit of trial strategy." Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984), and Abdullah has alleged no facts that would overcome the presumption that counsel's decision in this regard was strategic. Strickland, 466 U.S. at 689.

This Court finds nothing in the record to support Abdullah's meritless claim that counsel should have requested a Wade hearing.  Counsel cannot be expected to raise issues that are plainly frivolous and without merit.  Therefore, on this claim, the Court concludes that Abdullah has failed to demonstrate ineffective assistance of trial counsel.

2. *Failure to Object to Jury Charge*

Next, it appears that Abdullah is asserting a claim that counsel should have objected to the jury charge on identification and on attempted murder.

26

The trial court denied a similar claim raised by petitioner in his state PCR proceedings.  In a March 13, 1990 letter opinion, the trial court found that it was "obvious that the third count of the indictment charged attempted murder and Judge Telsey's charge on that count defined attempted murder and that the language 'during the commission of the crime of robbery' was merely descriptive and superfluous and had no tendency to mislead the jury in its deliberations as to that count and the other counts of the indictment."  (A-24; A-25).

This Court finds no error in the charge on attempted murder that would give rise to a claim of ineffective assistance of counsel for failing to object to the charge.[13]  Moreover,

---

[13]  Questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review. See Engle v. Isaac, 456 U.S. 107 (1982); Henderson v. Kibbe, 431 U.S. 145 (1977); Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson, J.).  Only where the jury instruction is "so prejudicial as to amount to a violation of due process and fundamental fairness will a habeas corpus claim lie."  Id.

Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

[t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the

Abdullah was acquitted of attempted murder.  Consequently, to the extent there may have been an error in failing to object to the attempted murder charge, it was plainly harmless.

---

      Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S. 1109 (1998).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute th crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) )(jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

      Where such a constitutional error has occurred, it is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at 416-17 (1997); Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless."  Smith v. Horn, 120 F.3d at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

      a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

As to the lack of an identification charge, the PCR court found no error in counsel's failure to have a separate and specific charge included in the jury instructions.  Specifically, the court concluded that identification testimony was not a critical or key issue in petitioner's case:

> Obviously, your conviction turned on the jury's determination of whether or not you are the one guilty of the commission of the crime charged as opposed to whether or not you were present on the scene.  The factual pattern considered by your jury is so far different from that involved in State v. Norman Green, supra, [citation omitted] that the necessity to include such a charge on identification evaporates and failure to include such a charge is not error much less plain error requiring relief.

(A25, March 13, 1990 letter opinion).

After reviewing the record, this Court finds nothing to indicate that the state court decisions (which concluded there was no error, and hence, no ineffective assistance of counsel) were based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor were the decisions contrary to established federal law.  Abdullah has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.  Accordingly, this claim of ineffective assistance of counsel is without merit.

3. *Counsel's Alleged Failure to "Explore" Lab Reports*

The Court construes this next claim inartfully asserted by Abdullah as a claim that counsel was ineffective for failing to

29

investigate or prepare a proper defense based on what petitioner characterizes as inconclusive lab results.

"[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation." <u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997); <u>Lewis v. Mazurkiewicz</u>, 915 F.2d 106, 111 (3d Cir. 1990)(counsel has a duty to investigate or to make a reasonable decision that makes particular investigations unnecessary).  When assessing an ineffectiveness claim based on failure to investigate, a court must assess the decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Strickland</u>, 466 U.S. at 691; <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 384 (1986); <u>see also</u> <u>Duncan v. Morton</u>, 256 F.3d 189, 201 (3d Cir.), <u>cert</u>. <u>denied</u>, 534 U.S. 919 (2001).  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Strickland</u>, 466 U.S. at 691-92.  Even if counsel was deficient in his decision not to investigate, a petitioner must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different.  <u>Lewis</u>, 915 F.2d at 115.

It is firmly established that a court must consider the strength of the evidence in deciding whether the second prong

under Strickland, i.e., prejudice, has been satisfied.  A court
"must consider the totality of the evidence before judge or
jury."  Strickland, 466 U.S. at 695.  This is necessary because
prejudicial error by counsel requires a court to determine
whether there is a reasonable probability that, but for counsel's
errors, the trial result would have been different.  Id.; Flamer
v. Delaware, 68 F.3d 710, 728 (3d Cir. 1995), cert. denied, 516
U.S. 1088 (1996).  A court simply cannot make this determination
without considering the strength of the evidence against the
defendant.

     The principal argument asserted by petitioner here is that
trial counsel did not adequately investigate and prepare a
defense with respect to allegedly exculpatory evidence noted in
the lab reports.  These reports purportedly excluded petitioner
from the scene of the crime.  No fingerprints were found to match
Abdullah.  The sneaker prints were too faint to compare, and hair
samples were inconclusive.

     The record shows that all forensic reports were provided to
counsel in discovery.  More significantly, however, the issues
raised by petitioner concerning the exculpatory nature of the lab
reports were stipulated at trial.  The prosecutor and defense
counsel stipulated that the forensic chemist report indicates
that a drop of blood found on a pair of rust-colored pants
belonging to petitioner was insufficient to determine its origin

or blood grouping.  They also stipulated that the sneaker prints found on the cardboard pieces did not match petitioner's sneakers and that the prints were too smeared to draw any conclusion.  The photographs of the sneaker prints were too faint to make any comparison.  (July 1, 1982 trial transcript 210:6-211:6; 213:13-214:4).

Finally, the Court's review of the trial transcript reveals that defense counsel was thoroughly prepared and aware of the critical issues in the matter.  This is reflected in defense counsel's aggressive cross-examination of Anchor Hocking witnesses, the investigating police officers, and other witnesses on key areas of credibility and circumstantial evidence. Moreover, counsel's closing argument was exhaustive and forcefully stressed the lack of direct physical evidence placing petitioner at the scene, the weaknesses in the witnesses' testimony, and the absence of any eyewitness testimony. Consequently, the record does not reveal anything that was not already known and investigated by defense counsel in preparing a defense for trial, and this Court finds no basis for a claim that counsel's performance was deficient or substandard.

Trial counsel is only required to make "reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." See Strickland, 466 U.S. at 691.  Thus, as stated above, the Court finds that Abdullah's

32

trial counsel ably represented petitioner with a clear understanding of the evidence, witnesses and the critical issues in the case.  It cannot be said that he was ill-prepared to defend petitioner.

Further, this Court notes that, in the absence of some competent proof that the investigation he suggests would have actually produced different evidence at trial, Abdullah cannot be said to have demonstrated a reasonable probability that, but for a failure to investigate, the result of the trial would have been different.  See Strickland, 466 U.S. at 687.  Nothing was presented at trial, or by petitioner in his habeas application here, that would support his mostly frivolous claims.  In the absence of some competent proof that additional investigation would have produced exculpatory evidence, the Court finds no merit in Abdullah's claim.  Hence, even if the Court assumes for arguments' sake that trial counsel was deficient in investigating and preparing a defense, it is plain from the lack of evidence produced by petitioner that he could not have met the second prong under Strickland, that is, that the investigation would have resulted in a different outcome at trial.  The trial record shows that the weight of the evidence, *albeit* circumstantial evidence, presented at trial was sufficiently strong that the jury would not have reached a different verdict.

33

Therefore, the Court concludes that Abdullah is not entitled to habeas relief based on allegations that trial counsel failed to investigate and prepare a defense.

4. *Ineffective Representation at Sentencing Phase*

This last claim is addressed more fully in this Opinion, infra, as it relates to petitioner's claim that his extended sentence was illegal.  Because there is no basis to the claim that a sentencing hearing on the extended term was not held, or that the elements of the first degree robbery conviction were not proven to support an extended term, the Court finds that Abdullah's claim that trial counsel was ineffective at the sentencing phase is wholly without merit.

In sum, Abdullah has failed to show any instance of deficient performance by counsel in his case, which would give rise to a claim of constitutional deprivation.  Therefore, the ineffective assistance of counsel claim is denied on the merits.

C. The Trial Court Abused Its Discretion

In another inartfully stated claim, Abdullah argues that the trial court abused its discretion in hindering Abdullah's right to a fair trial by ruling that res judicata precluded a review of an erroneous jury charge.

This claim appears to stem from the state PCR court's November 19, 1998 Order denying Abdullah's motion for post-conviction relief.  In that Order, the court found that Count 2

34

of Abdullah's PCR motion was "covered by a prior appeal [and] is barred by court rule and res judicata." The Order further stated that "Counts 3, 4 and 5 were not raised on an earlier appeal but were handled at a prior motion for post conviction relief and are barred by res judicata." (A-33, November 19, 1998 Order filed by Superior Court of New Jersey, Law Division, Salem County, denying Motion for Post-Conviction Relief).

It is apparent from the November 19, 1998 Order that Abdullah's PCR motion was held to be barred by operation of state procedural law, namely, N.J. Court Rules 3:22-3 and 3:22-4. Matters of state procedural law are not generally reviewable in a federal habeas petition. The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). This is generally true even where the state court incorrectly applied state law. Id. at 71. Rather, a federal habeas claim will lie only where a state court determination violated some federally protected right. Id. at 68. The Third Circuit likewise stated:

> Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.

<u>Wells v. Petsock</u>, 941 F.2d 253, 256 (3d Cir. 1991), <u>cert</u>. <u>denied</u>, 505 U.S. 1223 (1992); <u>see also</u> <u>Smith v. Zimmerman</u>, 768 F.2d 69, 73 (3d Cir. 1985)("a 'mere error of state law' is not a denial of due process").

Here, it is not for this Court to review on a federal habeas petition whether the state PCR court incorrectly applied state procedural law to bar review of Abdullah's claims that were previously raised and decided on direct appeal and on a prior PCR petition.  Further, it is plain that petitioner was not denied due process or other federally protected right.  The record clearly indicates that the PCR court correctly applied the state procedural bar and that the Appellate Division also found petitioner's claims to be without merit.  Therefore, this claim by petitioner is denied for failure to state a federal constitutional deprivation.

D.   <u>The Indictment Was Defective</u>

Next, Abdullah contends that the indictment was defective because it allegedly charged him with murder by use of a weapon, and no murder was committed, and no weapon was found.  This claim is obviously without merit.  The indictment clearly charges petitioner with "attempted murder", not murder.  It also plainly states that the first count charging petitioner with aggravated assault was by use of "a deadly weapon, to wit, by striking said victim, Wally Hahl, over the head with a bludgeon." (A-1, A-2;

Indictment dated August 21, 1981).  Evidence and testimony was
produced at the grand jury proceedings to support the charges.
Accordingly, the Court finds petitioner's claim in this regard to
be absurd and without merit.

E.   Prosecutorial Misconduct Before the Grand Jury

Abdullah also claims that the prosecutor failed to tell the
grand jury about lab reports which purportedly excluded him from
the scene of the crime, and that he improperly characterized the
facts to get an indictment.  Thus, the grand jury was unduly
influenced, and the indictment should be dismissed.

This claim was initially raised on direct appeal and was
rejected as without merit.  First, the state court found no merit
to Abdullah's suggestion of prosecutorial misconduct during the
grand jury proceedings.  (A-16, June 24, 1985 Appellate Division
Opinion, at pg. 7).  The court stated:

> It is defendant's position that the prosecutor usurped the
> grand jury's decision making function by improperly
> characterizing the facts... .  There is no impropriety in
> the prosecutor's assisting in the investigation and
> examination of witnesses, in advising the grand jury as to
> the admissibility of evidence and in explaining testimony
> with reference to the law of the case so long as the
> prosecutor does not express his views on questions of fact,
> comment on the weight or sufficiency of the evidence or
> attempt to influence the grand jury in its findings.
> [citations omitted].  A chance remark before the grand jury
> does not affect the ultimate determination of defendant's
> guilt and therefore should not be judged on the same level
> with improper comment before a petit jury. [citation
> omitted].  Unless the prosecutor's misconduct before a grand
> jury is extreme and clearly infringes upon the jury's
> decision making function, it should not be utilized to
> dismiss the indictment. [citation omitted].

37

> ... Moreover, the prosecutor did not urge that the grand
> jury should indict because of the facts recited but rather
> stated the jury should refer to the testimony it had heard
> in determining whether there was probable cause to believe
> defendant committed had committed any crime.  Defendant's
> contentions of prosecutorial interference with the grand
> jury deliberations are therefore rejected.[14]

(A-16 to A-17).

Second, there is no federal constitutional right to a grand
jury in state criminal proceedings, thus defects in a state grand
jury process are not reviewable via a federal habeas petition
unless they "rise for some other reason to the level of a denial
of rights protected by the United States Constitution."
Wainwright v. Goode, 464 U.S. 78, 86 (1983); see also Jelinek v.
Costello, 247 F. Supp.2d 212, 278 (E.D.N.Y. 2003)("On its face, a
state prisoner's claim that he was denied the procedural right to
be indicted by a grand jury appears to implicate a right that is
exclusively of state concern").  Abdullah has been unable to show
how the alleged defect in the grand jury proceedings, that is,
the prosecutor's failure to present the lab reports, deprived him
of his constitutional rights.  Moreover, the forensic reports
were not yet available when the grand jury proceedings took
place.  (September 17, 1981 Grand Jury transcript, 20:21).[15]

---

[14] Petitioner's claim on direct review in state court dealt
with the prosecutor' remarks to the grand jury about the
circumstances of Abdullah's arrest.

[15] The forensic reports were prepared on December 15, 1981,
as to the blood analysis, and October 29, 1981, as to the sneaker
print identification.  (July 1, 1982 trial transcript, 210:7-23).

Thus, the prosecutor could not present evidence to the grand jury which the State did not yet possess.

Moreover, a claim as to the validity of a state indictment, as opposed to the fairness of a trial, does not typically rise to the level of a constitutional deprivation because any such claims alleging error in a state grand jury proceeding are rendered harmless by the subsequent guilty verdict by a petit jury. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989). See also United States v. Mechanik, 475 U.S. 66, 72-73 (1986); United States v. Enigwe, 17 F. Supp.2d 390, 393 (E.D. Pa. 1998), aff'd, 248 F.3d 1131 (3d Cir. 2000), cert. denied, 531 U.S. 1185 (2001). Therefore, the petit jury's eventual conviction of Abdullah, even after the inconclusive findings of the lab reports, which had been stipulated by counsel on the record, renders harmless Abdullah's otherwise unsupported claim of irregularities in the grand jury proceedings. Accordingly, this claim for habeas relief will be denied.

F.   The Extended Sentence is Illegal

In this ground for relief, Abdullah contends that the sentence as imposed was excessive. The record shows that petitioner was sentenced to a discretionary extended term as a persistent offender under N.J.S.A. 2C:43-7 and 2C:44-3. The sentencing court sets forth its reasons for the extended term, pursuant to N.J.Ct.R. 3:21-4(e) in the Judgment of Conviction and

Order for Commitment, attached to the Answer at A-8, and the
amended petition at P.App.5.  It appears that the statement of
reasons was taken from the court's ruling at petitioner's
sentencing hearing.[16]  The court first states that petitioner was
convicted of robbery in the first degree.  The court went on to
note the testimony disclosed at trial which, although
circumstantial, was sufficient for the jury to conclude that
Abdullah was the offender.  The court next stated that the crime
was "heinous and deliberate", and found the following aggravating
factors:

> the offense was committed in an especially heinous, cruel or
> depraved manner as evidenced by the fact that it was not
> only calculated and deliberated as shown by the changes of
> clothes and clocking out and the returning and making a
> bludgeon, but the victim also suffered irreparable and
> permanent injuries.  The second aggravating circumstance is
> the gravity and seriousness of the harm inflicted upon the
> victim.  He is in a permanent coma with no hope for
> recovery.  This was caused by the bludgeoning.  I have
> considered the fact there is a risk the defendant will
> commit another offense based upon his overall attitude as
> well as his prior criminal record.  He does not seem to
> concern himself much about society's rules.  Not only has he
> committed many crimes in the past, but his personal life
> would indicate disregard for the rules.  He has support
> arrearages of substantial amounts from several marriages.  I
> must also consider the need for deterring others as well as

---

[16]   The State did not provide the sentencing transcript with
the trial record; however, it is clear that a hearing was
conducted as Abdullah also refers to a sentencing transcript in
his traverse.  (Docket Entry No. 12, at pg. 3).  Nevertheless, as
the reasons for the sentencing court's decision are fully set
forth in the Judgment of Conviction provided with the state court
record, the transcript is not necessary for this Court to make a
determination on the merits of Abdullah's claim.  (A-8).

the defendant from violating the law.  There is a very
strong need for deterrence in this type of case.

(A-8, Judgement of Conviction and Order for Commitment, Reasons
for Sentence pursuant to R. 3:21-4(e)).[17]  On Abdullah's motion
for post-conviction relief in state court, the PCR court found
that petitioner should have raised the issue on direct appeal,
and was barred from presenting the issue pursuant to N.J.Ct.R.
3:22-12.  (A-33)   The Appellate Division also found that the
claims presented on the PCR motion lacked merit that did not
warrant discussion.  (A-35).

In the habeas petition and traverse, Abdullah argues that he
was deprived of a hearing on the request for an extended term,
and thus, his sentence is illegal.  He also argues that the
Supreme Court ruling in Apprendi v. New Jersey 530 U.S. 466
(2001) provides that any fact that increases the penalty for a
crime beyond the prescribed statutory maximum, is an element of
the crime that must be presented to the jury and proven beyond a
reasonable doubt.  Abdullah further contends, inaccurately, that
his extended term was based on his conviction for a robbery
instead of "theft", and that the "degree" of robbery is not part
of the substantive offense but rather is merely a grading
provision.  Finally, Abdullah wrongly asserts that his conviction
for first degree robbery charge is in error because such an

---

[17]  N.J. Court Rule 3:21-4(e) pertains to extended or
enhanced terms of imprisonment.

offense necessarily includes the use of a deadly weapon, and
Abdullah implies that a deadly weapon is a gun, which was not at
issue here.  In short, Abdullah argues that he did not commit the
type of robbery one must commit to be eligible for sentencing to
an extended term.

Respondents argue that Abdullah's excessive sentence claim
is procedurally barred because the claim was never raised on
direct appeal and the state PCR court and Appellate Division
subsequently found the claim to be procedurally barred under N.J.
Ct.R. 3:22-12.  (Answer at 19; A-33, A-35).  Respondents did not
address the merits of petitioner's claim in their answer.
However, as stated in this Opinion, supra, at pp. 18-19, the
Court will exercise its discretion under § 2254(b)(2) to deny
relief where it is plain that no error occurred and that
petitioner's arguments are without merit.

First, the Court construes petitioner's claim as an argument
that the imposition of the extended term (life imprisonment with
a 25-year parole disqualifier) violated petitioner's right to due
process.  Based upon review of the record, however, the Court
finds that petitioner was appropriately sentenced as a persistent
offender and that there was no denial of due process in the
sentencing.

It is apparent from the record that petitioner had a
sentencing hearing and was accorded all process that was due

42

under the law.  The sentencing court weighed all of the
aggravating factors and apparently found no mitigating factors.
To the extent Abdullah claims that he did not commit the type of
crime encompassed by a first degree robbery charge, it is belied
by the jury conviction for first degree robbery.  Further, the
sentencing court listed the elements of the offense, and the
evidence proven at trial that supported a conviction on all
elements of a first degree robbery offense.

Thus, the sentencing court expressly found that Abdullah was
subject to an enhanced sentence on a first degree robbery
conviction as a persistent offender and that the enhanced
sentence imposed was appropriate in the exercise of that court's
discretion.  See N.J.S.A. 2C:44-3a (regarding enhanced sentences
for persistent offenders).  Accordingly, where Abdullah does not
challenge his status as a persistent offender but instead claims
that he did not have a due process hearing, the Court concludes
that the illegal and excessive sentence claim is meritless.

Next, the Court finds that Abdullah's Apprendi claim is not
availing.  The Supreme Court held in Apprendi: "Other than the
fact of a prior conviction, any fact that increases the penalty
for a crime beyond the prescribed statutory maximum must be
submitted to a jury, and proved beyond reasonable doubt."
Apprendi, 430 U.S. at 489.  Here, the first basis for an extended
term, that Abdullah was convicted of first degree robbery, had

43

been submitted to a jury and proven beyond a reasonable doubt.
The second basis, that Abdullah was a persistent offender, does
not fall within the scope as set forth in Apprendi.  Id.  Indeed,
the Supreme Court held in Blakely v. Washington, 542 U.S. 296
(2004) that an enhanced sentence as a persistent offender based
upon a record of prior convictions is a fact which could be
determined by the judge and could serve as the basis for
determining the statutory maximum sentence.  Accordingly,
Abdullah's Apprendi argument with respect to his excessive
sentence claim also lacks merit and will be denied.

        In sum, based on the record, this Court finds that
petitioner's sentence fell within the permissible statutory limit
in effect at the time.  The Court also finds the determining
factors advanced by the sentencing judge in support of an
extended term were sound and reasonable.  Moreover, even if this
Court was of the opinion that the sentence was excessive, which
is not the case, it is well established that "the severity of the
defendant's sentence alone constitutes no ground for [habeas]
relief."  United States ex rel. Jackson v. Myers, 374 F.2d 707,
711 n. 11 (3d Cir. 1967); see also Townsend v. Burke, 334 U.S.
736, 741 (1948).  Therefore, having determined that the state
court's sentence did not violate any federal constitutional
rights, federal habeas relief cannot be granted, and this claim
will be denied.

G.  <u>Ineffective Assistance of Appellate Counsel</u>

Lastly, Abdullah broadly asserts that his appellate counsel was ineffective in violation of his constitutional rights for his failure to raise obvious issues of error that were meritorious and would have likely led to his conviction being reversed on appeal.  In his state PCR petition, this claim relating to the ineffectiveness of appellate counsel appears to be limited to counsel's failure on appeal to challenge the trial court's failure to request an identification charge.  The PCR court found that "[S]ince ... there is no plain error involved in this failure to include a separate and specific charge on identification, the claim of ineffective appellate counsel based on that point must also fail and this final ground of Post-Conviction Relief is denied." (A25).

Claims of ineffective assistance of appellate counsel are evaluated under the <u>Strickland</u> standard previously discussed.  <u>See</u>  <u>Wright v. Vaughn</u>, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004).  In order to prevail on a claim that appellate counsel was ineffective, Abdullah must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  <u>See</u> <u>Buehl v.</u>

45

Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Here, Abdullah has failed to show that the performance of his appellate counsel was deficient and that he was prejudiced thereby, and in light of the evaluation of this issue by the state courts, this Court cannot conclude that that the determination of this issue resulted in a decision that was contrary to, or involved an unreasonable application or determination of law or fact. Williams v. Taylor, supra. Accordingly, the Court will deny relief on this claim.[18]

### V.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Abdullah demonstrates that he has failed to make a

---

[18]   To the extent that Abdullah includes all of trial counsel's alleged errors as part of his claim that appellate counsel was ineffective for failing to raise them on appeal, the Court finds that such a claim lacks merit.  For the reasons stated in this Opinion, supra, Abdullah has not shown that his appellate counsel's decision not to include these arguments on appeal fell below an objective standard of reasonableness.  More importantly, Abdullah has not shown that there is a reasonable probability that had such arguments been presented on appeal, they would have been meritorious.

substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. §§ 2253(c)(2).

### CONCLUSION

For the foregoing reasons, this Court finds that Abdullah's § 2254 habeas petition should be denied on the merits.  A certificate of appealability will not issue.  An appropriate Order accompanies this Opinion.


s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge


DATED: August 23, 2005

47